UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

MARVIN PROFITT,

    Plaintiff,

v.

JASON TAUCHES,

    Defendant.

Case No. 21-cv-00275-RMI

**ORDER RE: MOTION TO DISMISS**

Re: Dkt. No. 7

Now pending before the court is Defendant's Motion (dkt. 7) seeking dismissal of Plaintiff's Complaint (dkt. 1) without leave to amend. Both Parties have consented to proceed before a magistrate judge (dkts. 6, 9, 10), and the Motion has been fully briefed in that Plaintiff has submitted a Response (dkt. 12) as well as a Supplemental Response (dkt. 16), and Defendant has filed a Reply (dkt. 17). Pursuant to Civil Local R. 7-1(b), the court finds that this matter is suitable for disposition without oral argument; and, for the reasons stated below, Defendant's Motion (dkt. 7) is granted.

**BACKGROUND**

On January 7, 2021, Plaintiff signed and mailed an original Complaint (dkt. 1 at 5; dkt. 1-4 at 1) that was received and filed by the Clerk of Court on the following day. In essence, Plaintiff is suing his former attorney for alleged acts and omissions purporting to amount to malpractice in the handling of an appeal that followed Plaintiff's conviction in the matter of several episodes of driving under the influence. *See* Compl. (dkt. 1) at 4; *see also* Exh-C to Compl. (dkt. 1-1) at 9. Plaintiff claims that he hired Defendant to appeal his conviction, to exhaust all claims in the California Supreme Court, and to draft a federal habeas corpus petition which Plaintiff would then

file *pro se*. *See* Compl. (dkt. 1) at 4. However, when this court found (*see Profitt v. Howe et al.*, Case No. 17-cv-7136-JD (N.D. Ca. Filed June 21, 2018 (dkt. 9 at 2-4)) that some of Plaintiff's habeas corpus claims were un-exhausted, Plaintiff was given an opportunity to return to state court for the purpose of exhausting those claims. In this regard, Plaintiff contends that Defendant was negligent in failing to exhaust these claims in the first place, and then once again negligent in that he "refused to go back and exhaust those claims" when given the opportunity by the federal habeas court. Compl. (dkt. 1) at 4. Plaintiff then adds that further evidence of Defendant's alleged negligence is apparent in the "[f]ailure to apply the law correctly to the plaintiff's situation." *Id*. As a result, Plaintiff contends that due to Defendant's failure to exhaust the two claims in question, Plaintiff had to remove those claims from his federal habeas petition, which he submits caused the denial of his petition on January 15, 2020. *Id*.

Because Defendant has raised a defense under the statute of limitations – this court must identify the date on which Plaintiff became aware (or reasonably should have been aware) of his attorney's failure to present the two due process claims for exhaustion before the California Supreme Court. While the Complaint in this case (a pre-printed form completed by hand) does not contain very much by way of pertinent factual details (as opposed to hyperbole and argumentative matter) – Plaintiff has attached a series of exhibits that can be relied upon to complete the gaps in the narrative of the facts underlying this case. Plaintiff has attached Judge Donato's order dismissing his habeas corpus petition with leave to amend (due to the fact that it was a mixed petition), and therein one can find a wealth of additional details about Plaintiff's criminal case and its aftermath. *See generally* Exh-C to Compl. (dkt. 1-1) at 9-11. Following his conviction by jury verdict for five counts related to several felony and misdemeanor charges for driving under the influence, Plaintiff's conviction was upheld on appeal, and the California Supreme Court denied his petition for review. *Id*. at 9. As to the two unexhausted due process claims that form the basis of Plaintiff's instant negligence claim, those were: (1) that his due process rights were violated due to the police officer's failure to preserve certain video evidence and that the officer failed to conduct a sobriety test in front of the police car's dash-mounted camera; and, (2) that his due process rights were violated (under *Brady v. Maryland*, 373 U.S. 83 (1963)) when the prosecutor

failed to provide the defense with the name and address of a police employee prior to the filing or litigation of a motion to suppress. *See id*. at 10. Plaintiff's habeas corpus petition also contains two pieces of information that are relevant in the present context. First, it should be noted that as early as July 10, 2017, Plaintiff had completed his supervised release; and, second, on August 19, 2017, the California Supreme Court denied his petition for review. *See Profitt v. Howe et al*., Case No. 3:17-cv-7136-JD, Pet. (dkt. 1) at 3. Therefore, since the California Supreme Court denied his petition for review on August 19, 2017, it would be reasonable to infer that (at least) on this date Plaintiff knew or should have known that his two due process claims had not been presented for review before that court. Alternatively, there is no room to dispute the fact that Plaintiff was aware of the basis for his negligence claim no later than June 21, 2018 – that is, the date on which Judge Donato dismissed Plaintiff's *pro se* habeas petition for its failure to exhaust the two due process claims in question. *See* Exh-C, Compl. (dkt. 1-1) at 13. Furthermore, Plaintiff has also attached certain correspondence to his Complaint between himself and Defendant – wherein Defendant wrote Plaintiff on November 30, 2017, and informed Plaintiff of – among other things – the fact that, "[t]he attorney-client relationship between us is now over and I am unable to render further legal advice on this or on any other matter without specifically being retained to do so [and] I am closing our file pertaining to this matter and returning to you, under cover of this correspondence, the records related to your case." *See* Exh-B, Compl. (dkt. 1-1) at 5-6.

Regarding the gist of Plaintiff's claims, and the pertinent dates underslying those claims, the above-recited facts are the sum of the information that is relevant to the resolution of Defendant's motion. Aside from this pertinent information, the remainder of Plaintiff's Complaint is largely composed of argumentative material, conclusory statements, or information related to damages. Plaintiff's Complaint does its best to plead around the statute of limitations issue by couching the claim as such: (1) Defendant was hired to appeal the conviction and to exhaust all claims in the California Supreme Court and to draft (but not necessarily file) a habeas corpus petition which Plaintiff would file *pro se*; (2) Defendant then failed to exhaust the two above-described due process claims; and (3) when the federal habeas court gave Plaintiff an opportunity to go back and exhaust the claims, Defendant reportedly refused to do so. Compl. (dkt. 1) at 4; *see*

3

*also* "Explanation of Events and Exhibits" (dkt. 1-1) at 1. The Complaint then states that the consequence "of defendant's willful negligence to exhaust those claims" was that Plaintiff had to remove the two claims from his habeas corpus petition, which Plaintiff submits was the reason that the petition was ultimately denied on January 15, 2020. Compl. (dkt. 1) at 4. Additionally, while it appears to be unrelated to the two due process claims described above, or to Defendant's reported failure to exhaust the two claims on appeal, the damages section of the Complaint also states that "the trial record has evidence that the district attorney, judge, deputy district attorney, CHP officer, and Plaintiff's defense attorney conspired to obstruct justice, the district attorney fraudulently introduced Plaintiff's criminal history reports at trial and [the] defense attorney made no objection, [while] the district attorney introduced false charges so he could justify showing the jury the DMV report and Plaintiff's criminal history report." *Id*. By way of relief, Plaintiff seeks $169,200.00 in compensatory damages for lost income, pain and suffering, and for certain unspecified out-of-pocket expenses, as well as $507,600.00 in "punitive damages." *Id*.

**LEGAL STANDARD**

Initially, because Plaintiff is proceeding *pro se*, the court will note that his pleadings will be construed liberally such that his submissions will be interpreted in a manner to raise the strongest arguments they suggest. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972); *see also Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 475 (2d Cir. 2006). In order to survive dismissal, however, a complaint must contain more than a "formulaic recitation of the elements of a cause of action" and must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "The pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id*. Instead, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

In considering a motion to dismiss, the court must accept as true the factual allegations of

4

the complaint in question, *Hospital Bldg. Co. v. Rex Hospital Trustees*, 425 U.S. 738, 740 (1976), construe the pleading in the light most favorable to the party opposing the motion, and resolve all doubts in the pleader's favor. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969). Thus, the court will "'presume that general allegations embrace those specific facts that are necessary to support the claim.'" *National Organization for Women, Inc. v. Scheidler*, 510 U.S. 249, 256 (1993) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). In the course of the motion to dismiss inquiry, the court may consider facts established by exhibits attached to the complaint. *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987). The court may also consider facts which may be judicially noticed, *Mullis v. United States Bankruptcy Ct.*, 828 F.2d 1385, 1388 (9th Cir. 1987), and matters of public record, including pleadings, orders, and other papers filed with the court, *Mack v. South Bay Beer Distributors*, 798 F.2d 1279, 1282 (9th Cir. 1986). However, the court is not required to accept as true conclusory statements, especially when they are contradicted by documents attached to the complaint or referenced therein. *See Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295-96 (9th Cir. 1998). Furthermore, the court is not required to assume the truth of legal conclusions or argumentative statements contained in a complaint merely because those legal conclusions or arguments are cast in the form of factual allegations. *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003).

In line with these standards, a claim may be dismissed under Rule 12(b)(6) on the ground that it is barred by the applicable statute of limitations when "the running of the statute is apparent on the face of the complaint." *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997 (9th Cir. 2006). Therefore, "[w]hen a motion to dismiss is based on the running of the statute of limitations, it can be granted only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled." *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980). Lastly, as to the nature of a dismissal, when a court dismisses a complaint under Rule 12(b)(6), it must then decide whether to grant leave to amend, and "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and internal quotation marks omitted).

"[D]ismissal of a *pro se* complaint without leave to amend is proper only if it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Weilburg v. Shapiro*, 488 F.3d 1202, 1205 (9th Cir. 2007) (citation omitted).

**DISCUSSION**

Defendant has moved to dismiss this action as barred by the applicable statute of limitations. *See* Def.'s Mot. (dkt. 7) at 6-10. Defendant submits that the applicable statute of limitations provides that an action against an attorney for a wrongful act or omission – other than for actual fraud – arising in the performance of professional services shall be commenced within one year after the client discovers, or through the use of reasonable diligence should have discovered, the facts constituting the wrongful act or omission, or four years from the wrongful act or omission, whichever comes first. *See id*. at 6-7 (citing Cal. Code Civ. Proc. § 340.6). In pertinent part, Defendant submits that this case is barred by the 1-year statute of limitation due to the following facts: (1) the attorney-client relationship ended on November 30, 2017, when Defendant provided Plaintiff with notice to that effect (*see* Exh-B, Compl. (dkt. 1-1) at 5-6); (2) Plaintiff knew of the facts constituting the basis of the professional negligence claim involved in this case at least as of June 21, 2018, when Judge Donato dismissed his federal habeas petition due to the inclusion of the two due process claims discussed above while clearly explaining to Plaintiff that those claims had not been presented to the California Supreme Court during the course of Plaintiff's direct appeal process. *See* Def.'s Mot. (dkt. 7) at 4, 6-7.

By way of response, Plaintiff contends that the Complaint in this case was timely filed on January 8, 2021, because "[t]he date of injury was 1-15-2020." *See* Pl.'s Opp. (dkt. 12) at 2. Because this statement did not clearly address Defendant's arguments about the statute of limitations, the court ordered Plaintiff to submit a supplemental response through which Plaintiff was "directed to state the date on which Plaintiff became aware of Defendant's alleged malpractice, negligence, or any act or omission on Defendant's part that serves as the foundation for this lawsuit . . . [and, assuming that] Plaintiff became aware of the basis for this malpractice lawsuit more than 1 year before filing this lawsuit, Plaintiff should also explain what, if any, factors caused the delay occasioned in filing this lawsuit." Order (dkt. 13) at 2. In his supplemental

6

response, Plaintiff contends that the operative date should be fixed at January 15, 2020, the date that his habeas petition was ultimately denied, because that is the date on which Plaintiff was definitively injured. *See* Pl.'s Supp. Opp. (dkt. 16) at 1-2. Plaintiff then voices some disagreement with the fact that the attorney-client relationship ended on November 30, 2017, because of the assertion that Defendant's failure to exhaust the two due process claims, coupled with his subsequent refusal to do so (after the dismissal without prejudice of his mixed petition on June 21, 2018) means that Defendant was guilty of "a willful dereliction of duty, [because] all tasks were not completed and that triggers the continuing representation provision of Cal. Code Civ. Proc. § 340.6(a)(1), which provides [for] tolling [of the] statute of limitations for [a] legal malpractice claim." *Id*. at 2. Plaintiff then adds that he only "became aware of the facts that made the basis of an attorney malpractice claim on May 7, 2020" when he filed a bar complaint against Defendant and "after further investigation Plaintiff discovered this article (sic) that was printed in the local newspaper on January 11, 2013, 43 days before Plaintiff's arrest and the office of Traffic Safety granted the District Attorney's Office [] $150,000 to put together a 'vertical DUI prosecution team' that will make sure no one falls through the cracks and the worst offender[s] [will] face a highly skilled, dedicated prosecutor," which Plaintiff views as proof "that explained a conspiracy to obstruct justice to the Plaintiff." *Id*. at 2-3.

      In general, the elements of a cause of action for attorney malpractice in California are: (1) the duty of the professional to use such skill, prudence, and diligence as other members of his or her profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting from the professional's negligence. *See Pynchon v. Bursell*, No. CIVIL S-82-615 LKK, 1984 U.S. Dist. LEXIS 22609, at *73-74 (E.D. Cal. Oct. 19, 1984) (citing *Budd v. Nixen*, 6 Cal. 3d 195, 200 (1971)). As mentioned above, the limitation period for attorney negligence is one year from actual or constructive discovery, or four years from the negligent act, whichever comes first. *See Becker v. California*, No. 92-16676, 1994 U.S. App. LEXIS 2967, at *6 (9th Cir. Feb. 10, 1994) (citing Cal. Civ. Proc. Code § 340.6.). In this regard, Plaintiff asserts that the breach of Defendant's duty came in the form of failure to present two due process claims to the Supreme

7

Court of California (*see* Compl. (dkt. 1) at 4). As for *when* Plaintiff became aware of this failure on Defendant's part, it cannot be argued Plaintiff was not aware of the failure to present those claims to the California Supreme Court any later than June 21, 2018, the date on which Judge Donato dismissed (with leave to amend) Plaintiff's *pro se* habeas corpus petition while unmistakably informing Plaintiff that the two due process claims in question had not been presented to the California Supreme court and were therefore unexhausted. *See* Exh-C to Compl. (dkt. 1-1) at 13. Therefore, unless Plaintiff could avail himself of some form of tolling, the 1-year limitations period began to run on June 21, 2018, at the latest.

Plaintiff presents two arguments to avoid the above-described running of the statute of limitations. First, Plaintiff submits that Defendant was "under contract" until such time that he would have "completed all tasks required of him" and "the facts are [that] he did not exhaust two of the five claims in the Cal. Supreme Court, and [] he was given the opportunity to fix [it], but refused, [on or after June 21, 2018, when his *pro se* habeas petition was dismissed with leave to amend] [and] that was a willful dereliction of duty, [because] all tasks were not completed and that triggers the continuing representation provision of Cal. Civ. Code Proc. § 340.6(a)(1), which provides tolling for [the] statute of limitations for [a] legal malpractice claim." *See* Pl.'s Supp. Opp. (dkt. 16) at 2 (citing *Budd v. Nixen*, 6 Cal. 3d 195, 200 (1971)). However, there are a number of flaws in Plaintiff's argument. First, this contention is contradicted by materials attached to Plaintiff's own complaint. Exhibit B to Plaintiff's Complaint makes two things clear: (1) in November of 2017, Defendant wrote Plaintiff to inform him that he had completed all tasks for which he had been retained, including the fact that Defendant had "researched, drafted and filed a Petition for Review with the Supreme Court of California" (there was no further detail pertaining to *how many* or *which* claims must have been or should have been presented to that court); and (2) that as of November 30, 2017, the attorney-client relationship between Plaintiff and Defendant was terminated and that Defendant was no longer Plaintiff's attorney. *See* Exh-C to Compl. (dkt. 1-1) at 5-6. As mentioned above, this court is not required to accept as true conclusory allegations which are contradicted by documents attached to the complaint or referenced therein (*see Steckman*, 143 F.3d at 1295-96) or to assume the truth of legal conclusions or argumentative

8

statements contained in a complaint merely because those legal conclusions or arguments are cast in the form of factual allegations (*see Warren*, 328 F.3d at 1139). Accordingly, it is evident from the Complaint and materials attached thereto that: (1) Defendant was no longer Plaintiff's attorney as of (at least) November 30, 2017; and (2) that Defendant was either constructively or actually aware of the fact that the two above-mentioned due process claims had not been submitted to the California Supreme Court (at least) as of June 21, 2018, when Plaintiff was expressly informed of that fact by Judge Donato's order dismissing his *pro se* habeas corpus petition. Therefore, the court rejects Plaintiff's assertion of tolling based on "continuing representation" because there was no continuing representation, and also because Plaintiff's conclusory statement regarding Defendant's supposed obligation to let Plaintiff decide which claims should or should not have been presented to the California Supreme Court is likewise contradicted by correspondence that Plaintiff has attached to his Complaint.

In this regard, Plaintiff's reliance on *Budd* to support his interpretation of the statute's continuing representation provision is misplaced. *Budd* is now 50 years old – and, as explained more recently by the California Supreme Court, the history leading up to the enactment of section 340.6 suggests a legislative intent that is wholly inconsistent with Plaintiff's reading of the statute. *See Beal Bank, SSB v. Arter & Hadden, LLP*, 42 Cal. 4th 503, 509 (2007). The *Beal* court explained that while attorney malpractice actions were once governed by a strict two-year limitations period running from the time of the negligent act, in 1971, recognizing that this rule was "harsh," "unfair," and "discriminatory," the California Supreme Court held that a malpractice action accrues only when the aggrieved client discovers, or should discover, the facts essential to the malpractice claim, including actual and appreciable harm. *Id.* (citing *Neel v. Magana, Olney, Levy, Cathcart & Gelfand*, 6 Cal.3d 176, 186, 194 (1971); and *Budd*, 6 Cal.3d at 200–201). As the state supreme court noted in 1971, however, "this delayed discovery rule placed 'an increased burden upon the legal profession,' having as one undesirable consequence the subjecting of attorneys to open-ended liability: 'An attorney's error may not work damage or achieve discovery for many years after the act, and the extension of liability [indefinitely] into the future poses a disturbing prospect.'" *Beal*, 42 Cal. 4th at 509 (quoting *Neel*, 6 Cal.3d at 192). Thus, as the *Beal*

9

court explained, the problems that the court foresaw in *Neel* and *Budd* (*e.g.*, rapidly rising malpractice insurance premiums) began to manifest themselves until widespread discussion in California's legal community resulted in the legislative passage of a special statute of limitations for attorney malpractice actions during the 1977-1978 legislative session, culminating in the provisions now found at § 340.6. *See Beal*, 42 Cal. 4th at 510. While the originally introduced version of Assembly Bill No. 298 (1977–1978 Reg. Sess.) limited grounds for tolling to fraud or intentional concealment, in May of 1977, the bill was rewritten to include a "continuous representation" tolling provision which was intended to codify a rule that had then developed in other states and which provided for tolling of an action based on continued representation by the defendant attorney or firm. *Beal*, 42 Cal. 4th at 510. Thus, the very suggestion advanced here by Plaintiff, a broad interpretation of § 340.6's continuous representation provision, was rejected in *Beal*; and, there is no merit to Plaintiff's nebulous assertion that the "representation" had never ended despite documentary evidence attached to his own Complaint clearly indicating the ending of the attorney-client relationship in 2017. *See id*. ("We are thus reluctant to conclude the Legislature intended a broader application when it codified the continuous representation rule."). Therefore, § 340.6's limitations period provisions were enacted to strike a balance between protecting of the interests of clients, who should not be prevented from obtaining relief when they previously could not have become aware of professional negligence, and the interests of attorneys, who in order to obtain malpractice coverage needed some definite outer boundary to the limitations period. *Id*. at 511. As noted in *Beal*, the purpose of the continuous representation exception was to "avoid the disruption of an attorney-client relationship by a lawsuit while enabling the attorney to correct or minimize an apparent error, and to prevent an attorney from defeating a malpractice cause of action by continuing to represent the client until the statutory period has expired." *Id*. (internal quotation marks and citations omitted). Therefore, Plaintiff's reliance on *Budd* and his invocation of section 340.6's continuous representation provision here is misplaced for the reasons described above.

        Plaintiff's second argument that is calculated to avoid the effect of the statute of limitations in this case suggests that the statute of limitations should not be interpreted as beginning to run

until January 15, 2020, when Judge Donato ultimately denied *the other claims* in Plaintiff's habeas petition (which he had refiled once removing the unexhausted claims that he had decided against attempting to exhaust himself). *See* Pl.'s Supp. Opp. (dkt. 16) at 1-2. The essence of this argument is an urging for the court to ignore the date on which Plaintiff became aware of his attorney's alleged negligence, and to instead focus on the date that Plaintiff contends he suffered the consequential injury stemming from that alleged negligence. However, there are several problems with this argument. First, Plaintiff's interpretation of the word "injury" stretches the concept to its breaking point. If Plaintiff was injured at all by the failure to present two claims to the California Supreme Court, the injury was effected and complete at the time of that omission, not years later when certain other claims were denied by another court. Second, when Judge Donato initially dismissed Plaintiff's *pro se* habeas petition with leave to amend on June 21, 2018, Plaintiff could have presented those two claims to the California Supreme Court himself; instead, Plaintiff chose to amend his petition and remove those claims. Then, when that amended petition was later denied in January of 2020, it cannot be reasonably contended that all of these intervening events must be overlooked such that the January 2020 denial of his *other claims* was the point in time when his attorney's alleged negligence finally affected him.

In the attorney malpractice case styled as *Jordache Enterprises, Inc. v. Brobeck, Phleger & Harrison*, 18 Cal. 4th 739 (Cal. 1998), the California Supreme Court held that the statute of limitations for attorney malpractice accrues when the "fact of damage, rather than the amount" is determined. *See id.* at 752. Importantly, *Jordache* also emphasized the difference in legislative intent between sustaining "damage" and sustaining "actual injury" (*i.e.*, the fact of damage). *See id*. at 748. While the statute governing attorney malpractice claims commences upon "actual injury," a similar statute governing other professional negligence "commence[s] . . . after the cause of action shall have accrued"; thus, it is in other types of professional negligence cases that the limitations period commences when the plaintiff suffered "damage." *Compare* Cal. Civ. Proc. Code § 340.6 *with* Cal. Civ. Proc. Code § 312; *see also Norgart v. Upjohn Co.*, 21 Cal.4th 383, 389 (Cal. 1999) ("Under the statute of limitations, a plaintiff must bring a cause of action within the limitations period applicable thereto after accrual of the cause of action. The general rule for

11

defining the accrual of a cause of action sets the date as the time when the cause of action is complete with all of its elements."). This is a fair characterization of the particular facet of Plaintiff's misapprehension through which he submits that the limitations period should not be construed as commencing until the ascertainment of the "amount" of damage that Plaintiff perceives he has suffered – i.e., the ultimate denial, in January of 2020, of the habeas petition that he chose to amend such as to drop his two unexhausted claims. For the reasons stated above, the court rejects this interpretation and instead holds that the limitations period began to accrue when the "fact of damage, rather than the amount" was determined – which took place no later than June 21, 2018, when Judge Donato unmistakably informed Plaintiff that his two due process claims were unexhausted.

## CONCLUSION

Accordingly, the limitations period during which Plaintiff could complain about Defendant's alleged malpractice under § 360.4 commenced no later than June 21, 2018, and the one year limitations period expired on June 21, 2019. Plaintiff's Complaint (filed January 8, 2021) was therefore filed more than 1 year and 6 months after the expiration of the applicable limitations period. Furthermore, neither through anything asserted in the Complaint (dkt. 1) or any of its attachments, nor in Plaintiff's Opposition (dkt. 12) to Defendant's dismissal motion, nor in Plaintiff's Supplemental Opposition (dkt. 17) has Plaintiff made any argument, assertion, or suggestion that might convince the court that any of § 340.6's tolling provisions have any application to the facts at hand. Lastly, because the court has no doubt whatsoever that above-discussed deficiencies in the Complaint cannot be cured by amendment, Defendant's Motion (dkt. 7) is **GRANTED**, and Plaintiff's Complaint is **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED.**

Dated: June 29, 2021

ROBERT M. ILLMAN
United States Magistrate Judge